## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KONSTANTY O. SABILLO,

     Petitioner,

-vs-                                     Case No.  8:04-CV-1364-T-27TGW

JAMES R. MCDONOUGH[1],

     Respondent.

_____/

### ORDER

Petitioner, a State of Florida inmate proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging a conviction for second degree murder entered in the Sixth Judicial Circuit Court, Pinellas County, Florida. (Dkt. 1). Respondent has filed a response (Dkt. 14) to Petitioner's petition, and Petitioner has filed his reply (Dkt. 21) to the response. The matter is now before the Court for consideration on the merits of the Petition.

### Background

Petitioner was charged by Information with first degree murder (Dkt. 18, Ex. 001 at 10-11). On July 22, 1999, a jury found Petitioner guilty of the lesser included offense of second degree murder (Dkt. 18, Ex. 001 at 42). Petitioner was sentenced to a term of 25 years imprisonment (Dkt. 18, Ex. 001 at 71).

Represented by the public defender on direct appeal, Petitioner asserted that the trial court erred in: (1) overruling his objection to alleged improper closing arguments, and (2) denying his

---

[1]James McDonough, the current Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James V. Crosby, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

objection to admitting hearsay statements made by Petitioner (Dkt. 18, Ex. 003). The state appellate court affirmed Petitioner's conviction and sentence on October 27, 2000 (Dkt. 18, Ex. 004); *See Sabillo v. State*, 2000 Fla. App. LEXIS 13804 (Fla. 2nd DCA Oct. 27, 2000).

On January 4, 2001, Petitioner filed a Rule 3.850 motion for post-conviction relief alleging that: 1) the trial court committed fundamental error by permitting the jury to have during deliberations the tape recording of the victim's 911 call, which included a recording of the victim as she was being attacked and ultimately killed by Petitioner; 2) the trial court committed fundamental error by failing to give the jury an instruction as to the lesser included offense of third degree murder; 3) the trial court committed fundamental error by conducting individual voir dire outside of Petitioner's presence; 4) counsel was ineffective in failing to object to the jury having the 911 tape during deliberations; 5) counsel was ineffective in failing to ensure that the jury was instructed as to third degree murder; 6) counsel was ineffective in failing to arrange for Petitioner to be present during voir dire; 7) counsel was ineffective in failing to obtain a medical expert to present evidence that the victim's cause of death may have arisen out of other, intervening causes; 8) counsel was ineffective in failing to prevent unduly prejudicial photographs of the deceased victim from being admitted as evidence; 9) counsel was ineffective in failing to request a jury instruction as to self defense; 10) counsel was ineffective in failing to call the victim's psychiatrist to present evidence regarding the victim's mental illness, and her propensity towards violence); and 11) counsel was ineffective in failing to call a toxicologist to present evidence regarding the combined effects of Elavil and alcohol and whether the combination of the two might increase the victim's tendency to be delusional and wrongfully accuse Petitioner of trying to kill her. (Dkt. 18, Ex. 005, Vol. I at

2

1-177).

On February 26, 2002, the trial court summarily denied Petitioner's 3.850 motion on grounds one through nine, and ordered the State to respond to grounds ten and eleven. (Dkt. 18, Ex. 005, Vol. II at 306-408). The State filed a response addressing grounds ten and eleven (Dkt. 18, Ex. 005, Vol. III at 438-444), and Petitioner filed a reply (Dkt. 18, Ex. 005, Vol. III at 445-446). On May 6, 2002, the trial court denied Petitioner's 3.850 motion as to the remaining two grounds, ten and eleven (Dkt. 18, Ex. 005, Vol. III at 447-454). On March 5, 2003, the state appellate court affirmed the trial court's denial of Petitioner's 3.850 motion. (Dkt. 18, Ex. 006 at 2); *See Sabillo v. State*, 853 So. 2d 422 (Fla. 2nd DCA 2003)(table decision).

Petitioner then filed his federal habeas petition asserting eleven grounds for relief. Respondent acknowledges that the petition is timely but argues that it should be denied because Petitioner has failed to make the showing necessary for relief under 28 U.S.C. § 2254, and some of the claims are unexhausted, and, therefore, procedurally barred (Dkt. 14 at 7). Having reviewed the record, the parties' arguments, applicable statutes, and controlling case law, for reasons set forth below, this Court agrees with Respondent.

## Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court initially considers

the issues raised in the petition and enters a decision on the merits, § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dept. of Corrs.*, 278 F.3d 1245, 1255 (11th Cir. 2002).

The failure of a federal habeas petitioner to adhere to state procedural rules will bar federal review of those claims in a subsequent federal habeas corpus proceeding. *See Wainwright v. Sykes*, 433 U.S. 72 (1977); *Sims v. Singletary,* 155 F.3d 1297, 1311 (11th Cir. 1998). The federal habeas court must defer to the state court's interpretation of its procedural rules, and must enforce those rules as well as enforcing the procedural rulings of the state courts. *See Lindsey v. Smith*, 820 F.2d 1137 (11th Cir. 1989).

4

This Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a summary dismissal. Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. *See Coleman v. Thompson*, 501 U.S. 722, 735-36 (1991); *Kight v. Singletary*, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); *Tower v. Phillips*, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

## Evidentiary Hearing

To be entitled to an evidentiary hearing on habeas claims, the petitioner must "alleges facts that, if proved at the hearing, would entitle petitioner to relief." *Breedlove v. Moore*, 279 F.3d 952, 960 (11th Cir. 2002) (citation omitted). Because "such a hearing would not assist in the resolution of [Petitioner's] claim[s]," an evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a). *See Atwater v. Crosby*, 451 F.3d 799, 812 (11th Cir. 2006).

## Discussion

Since Petitioner's conviction was entered after AEDPA was enacted, his petition is subject to the provisions thereof. Where, as here, a state court initially considered the issues raised in the petition and entered a decision on the merits, § 2254(d) governs the review of the petitioner's claim.

5

*See Mobley v. Head,* 267 F.3d 1312, 1316 (11th Cir. 2001).

**Grounds One and Five[2]**

In Ground One, Petitioner asserts that he was denied his right to a fair trial when the state trial court failed to give a jury instruction on third degree murder after the trial court had told the jury that third degree murder is a lesser included offense of first degree murder. He also complains that the offense of third degree murder was left off of the jury verdict form, and, therefore, the jury was deprived of the opportunity to find him guilty of third degree murder.

In Ground Five, Petitioner asserts that his trial counsel was ineffective in failing to ensure that the trial court gave a jury instruction on third degree murder, and in failing to ensure that the offense of third degree murder appeared on the jury verdict form.

As to Ground One, under Florida law "third-degree felony murder is not a necessarily included offense of first-degree murder, but it is, under certain circumstances and evidence, a proper permissive lesser included offense of first-degree murder requiring a jury instruction to that effect." *Jimenez v. State*, 703 So. 2d 437, 440 (Fla. 1997); *overruled on other grounds by Delgado v. State*, 776 So. 2d 233 (Fla. 2000). "If there is no evidence to support a third-degree felony murder conviction, an instruction on the crime is not required." *Green v. State*, 475 So. 2d 235, 237 (Fla. 1985). A review of the record reveals that there is no evidence to support a third-degree felony murder conviction,[3] i.e., that Petitioner was committing a felony and his victim

---

[2]Ground "4B" in Petitioner's petition for writ of habeas corpus (Dkt. 1 at 11-12).

[3]Section 782.04(4), Florida Statutes (1999) states:

(4) The unlawful killing of a human being, when perpetrated without any design to effect death, by a person engaged in the perpetration of, or in the attempt to perpetrate, any felony other than any:

died during the commission of that felony.   Therefore, an instruction on that offense was not

required.   Petitioner does not demonstrate that the trial court's failure to give a jury instruction on

third-degree murder was contrary to, or an unreasonable application of Supreme Court precedent,

or was based on an unreasonable determination of the facts in light of the evidence presented  in

---

(a) Trafficking offense prohibited by s. 893.135(1),

(b) Arson,

(c) Sexual battery,

(d) Robbery,

(e) Burglary,

(f) Kidnapping,

(g) Escape,

(h) Aggravated child abuse,

(I) Aggravated abuse of an elderly person or disabled adult,

(j) Aircraft piracy,

(k) Unlawful throwing, placing, or discharging of a destructive device or bomb,

(l) Unlawful distribution of any substance controlled under s. 893.03(1), cocaine as described in s. 893.03(2)(a)4., or opium or any synthetic or natural salt, compound, derivative, or preparation of opium by a person 18 years of age or older, when such drug is proven to be the proximate cause of the death of the user,

(m) Carjacking,

(n) Home-invasion robbery,

(o) Aggravated stalking,

(p) Murder of another human being,

is murder in the third degree and constitutes a felony of the second degree, punishable as provided in s. 775.082,s. 775.083, or s. 775.084.

the State court proceeding.

As to Ground Five, because a jury instruction on third-degree was not required, and there was no evidence to support third-degree murder, it follows that counsel cannot be ineffective in failing to request a jury instruction on third-degree murder.

**Ground Two**

Petitioner asserts in Ground Two that he was denied a fair trial when the trial court allowed the State to play, three times during the trial, a tape recording of the victim's 911 call and then allowed the tape to be taken to the jury deliberation room.  Petitioner argues that because the tape was played more than once, the jury put more emphasis on that evidence than other evidence, and the jury members based their verdict on "inflamed passions and emotion." (Dkt. 1 at 7).  He also sets forth the arguments that he was unable to confront or cross-examine the 911 recording, and the State's use of the 911 tape was contrary to Florida law.

Ground Two is procedurally barred in this Court.  In Florida, "[a] claim of trial court error generally can be raised on direct appeal but not in a rule 3.850 motion[.]" *Bruno v. State*, 807 So. 2d 55, 63 (Fla. 2001).  It is well-settled in Florida that issues which could have been, should have been, or were raised on direct appeal cannot be raised in a collateral proceeding. *See Demps v. State*, 416 So. 2d 808, 809 (Fla. 1982) (Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.); *see also* Fla. R. Crim. P. 3.850(c)("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence.").  Petitioner did not raise the claim on direct appeal.  (Dkt. 18, Ex. 003).  He did raise the claim in

8

his Rule 3.850 motion.  (Dkt. 18, Ex. 005, Vol. I at 2-6).  However, the state trial court ruled that the claim "is not cognizable in a Rule 3.850 motion and should have been raised on direct appeal." (Dkt. 18, Ex. 005, Vol. II at 307).

"A state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claims in federal court absent a showing of cause for and actual prejudice from the default." *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 2506-07, 53 L. Ed. 2d 594 (1977)). The state trial court correctly applied state procedural bar principles to conclude that Petitioner's claim was procedurally barred.  A habeas petitioner may escape the procedural default doctrine either through showing "cause for the default and prejudice" or establishing a "fundamental miscarriage of justice." *Bailey*, 172 F.3d at 1306 (quotation marks and citation omitted). However, Petitioner fails to make either showing. Petitioner has not shown the requisite cause to excuse his procedural default. Furthermore, he has not established a "fundamental miscarriage of justice" inasmuch as this exception occurs only in an extraordinary case where a constitutional violation has resulted in the conviction of someone who is actually innocent. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001)(citations omitted). Moreover, his claim would clearly be barred if returned to state court.  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

**Ground Three**

Petitioner asserts that he was denied a fair trial when the state trial court allowed voir dire while he was out of the courtroom getting his medication (insulin) which was kept in a room

outside of the courtroom.[4]  He maintains that following the trial, his sister, who attended the trial, gave him information regarding how two jurors had answered questions during voir dire, and had he heard their answers he would have exercised peremptory challenges to keep them off the jury.

Petitioner did not raise the claim on direct appeal.  (Dkt. 18, Ex. 003).  He did raise the claim in his Rule 3.850 motion, but the state trial court found that the claim "should have been raised on direct appeal and is not cognizable in a Rule 3.850 motion."  (Dkt. 18, Ex. 005, Vol. II at 307-308).  Accordingly, Ground Three is procedurally barred, and Petitioner has not established either cause and prejudice nor a fundamental miscarriage of justice in this instance.

## Ground Four[5]

In Ground Four, Petitioner argues that counsel was ineffective when he failed to object to the jury having the 911 tape recording during jury deliberations.  Petitioner asserts that because the tape was played three times during the trial, allowing the jury to listen to the tape again during deliberations caused the jury to give more emphasis to the tape than other evidence, and it improperly inflamed their emotions.

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part test for analyzing ineffective assistance of counsel claims.  According to *Strickland*, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the

---

[4]Petitioner also asserts under Ground Three that his counsel was ineffective in allowing voir dire in Petitioner's absence.  However, Petitioner raises the ineffective assistance of counsel claim on this issue in Ground "4C" of his petition, and the Court will address the issue as Ground Six, *infra*.

[5]Petitioner's ground "4A."  (Dkt. 1 at 10).

10

"counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

   *Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998)("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

   "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Petitioner must demonstrate that the error prejudiced the defense to meet the standard for a finding of ineffective assistance of counsel. *Strickland*, 466 U.S. at 692. To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The cases in which habeas petitioners can properly prevail on a claim of ineffective assistance of counsel are few and far between. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S. Ct. 255, 130 L. Ed. 2d 175 (1994).

First, Petitioner fails to demonstrate prejudice. Although Petitioner states that the jury had the tape during its deliberations, he fails to allege or set forth facts demonstrating that the jury listened to the tape during deliberations. Furthermore, even if the jury did listen to the tape again during deliberations, Petitioner fails to show a reasonable probability that the outcome of the trial would have been different but for the jury listening to the tape during deliberations.

Second, Petitioner raised the ineffective assistance of counsel claim in his 3.850 motion, but the state trial court ruled that "Florida law permits tape recordings to be submitted to the jury during their deliberations." (Dkt. 18, Ex. 005, Vol. II at 308). Fla. R. Crim. P. 3.400(a) states in pertinent part *"Discretionary Materials. –* The court may permit the jury, upon retiring for deliberation, to take to the jury room...(4) all things received in evidence other than depositions." (emphasis in original). The 911 tape was not a deposition. Moreover, under Florida law "[n]ontestimonial exhibits with some verbal content are generally allowed to go into the jury room during deliberations." *Young v. State*, 645 So. 2d 965, 967 (Fla. 1994). Because the state trial court properly allowed the jury to have the 911 tape during its deliberations, Petitioner cannot show that his counsel's performance was deficient in failing to object to the jury having the 911 tape.

Third and finally, it is apparent that allowing the jury to listen to the 911 tapes during

12

deliberations was part of defense counsel's trial strategy.  During his closing argument defense counsel told the jury to "take this tape back and play it again and again." (Dkt. 18, Ex. 002, Vol. III at 347).  Defense counsel's position was the tape revealed that Petitioner told the truth, and the statements Petitioner made on the tape showed that Petitioner attempted to stop the bleeding, call an ambulance, and were  inconsistent with the actions of somebody who intended to kill another. (Id.).  Defense counsel's trial strategy cannot be second guessed, as "judicial scrutiny of counsel's performance must be highly deferential." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000); *quoting Strickland*, 466 U.S. at 689. Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it."*Adams v. Wainwright,* 709 F.2d 1443, 1445 (11th Cir. 1983).  Petitioner wholly fails to demonstrate that his counsel's tactical decision was patently unreasonable.

Petitioner fails to establish that the trial court's denial of this claim was either contrary to or an unreasonable application of *Strickland* or resulted in a decision that is based on an unreasonable determination of the facts. Thus, Petitioner is not entitled to federal habeas relief on Ground Four.

**Ground Six[6]**

Petitioner asserts that his counsel rendered ineffective assistance in failing to ensure Petitioner was present during voir dire.  Petitioner alleges that he had to leave the courtroom during voir dire to get his insulin, and counsel was ineffective in failing to stay voir dire until Petitioner returned or in failing to make arrangements to have Petitioner's insulin available to

---

[6]Petitioner's Ground "4C."  (Dkt. 1 at 13-14).

him in the courtroom. He also argues that counsel rendered ineffective assistance in failing to

obtain his consent prior to striking a juror whom he would have retained on the jury, and in

failing to use peremptory challenges on two jury members whom Petitioner did not want on the

jury.

Petitioner raised this claim in his state Rule 3.850 motion for post-conviction relief.

(Dkt. 18, Ex. 005, Vol. I at 27-29). In its amended final order denying relief, the state trial court

held as follows with respect to this claim:

> Defendant claims that counsel "did not have Defendant present
> during individual voir dire jury selection" because counsel "led the
> Defendant to believe that during jury selection he would not have
> access to his insulin." However, the record is clear that Defendant
> was present in the courtroom during voir dire and that he waived
> his right to attend bench conferences. [See Exhibit 4: Excerpt of
> Trial Transcripts, pg. 5-7.] Additionally, Defendant acknowledged
> that counsel had conferred with him on the potential jurors and
> Defendant agreed with the jury selection. [See Exhibit 4.] Also, the
> Court addressed Defendant's concerns regarding his insulin
> concerns and assured Defendant there would be no problem getting
> the insulin when Defendant needed it. [See Exhibit 4.] In fact,
> throughout the trial, counsel advised the Court on Defendant's need
> for insulin and Defendant was able to receive medical treatment.
> [See Exhibit 5: Excerpt of Trial Transcript, p. 4.] The Court finds
> that Defendant has not proven that counsel's performance was
> deficient and this claim is denied.

Although it is not fully clear from the record whether or not Petitioner was absent from

the courtroom during some or all of voir dire, the record would appear to support the state trial

court's findings. During the trial the following exchange took place:

> THE COURT: I would like to put on the record, as we know Dr.
> Sabillo had an opportunity and a right to be at the bench while
> making the jury selection. Twice during the jury selection you left
> the bench and went to talk with him to verify the final jury count. I

14

would like to get Mr. Sabillo's statements on the record.

MR. GARDNER: Yes, Your Honor.

THE COURT: Mr. Sabillo, you were not at the bench during jury selection. Do you agree with the jury that your lawyer picked?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you agree with the selections your lawyer made, and he talked with you about it before the jury was selected; is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.

Although Petitioner was not at the bench while counsel was selecting the jury, Petitioner's counsel twice left the bench to discuss the matter with Petitioner, and Petitioner verified that his counsel discussed the jury selections with him, and he agreed with the jury counsel had selected.

Petitioner's argument that counsel was ineffective in failing to strike two veniremen and for striking another is meritless. An ineffective assistance of counsel claim based on counsel's failure to strike an allegedly biased veniremen requires a petitioner show a juror's actual bias. *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001). Petitioner neither shows actual bias nor shows that counsel's failure to strike the two veniremen and failure to keep one veniremen on the jury prejudiced his defense. That is, Petitioner fails to show that if counsel had removed the two veniremen or kept the other, the jury would have acquitted him. See *Strickland*, 466 U.S. at 694. "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the

circumstances, would have done so." *Rogers*, 13 F.3d at 386. Petitioner asserts that his sister gave him information that he would have used to keep one venireman on the jury and strike two others, and speculatively alleges that had the two jurors not served on the jury, and the one venireman had served on the jury, the result of the trial could have been different. Petitioner fails to establish that the trial court's denial of this claim of ineffective assistance was either contrary to or an unreasonable application of *Strickland* or an unreasonable determination of the facts. Thus, Petitioner is not entitled to federal habeas relief on Ground Six.

**Ground Seven**[7]

Petitioner claims his attorney was ineffective in failing to obtain an expert witness, a pathologist, who would present evidence that the real cause of the victim's death was medical negligence following the stabbing, and who would also present evidence that a number of the cuts on the victim's body, photographs of which were presented during the trial, were made by medical professionals who attempted to treat the victim at the hospital following the stabbing. Petitioner argues that a pathologist may have testified that the victim died not because of the stabbing but because the medical professionals failed to timely treat her and give her blood, and would have testified that some of the wounds on the victim were made by medical professionals while they were attempting to treat her, for example, by cutting her throat to insert a tube, and by making an incision on her chest.

In his Rule 3.850 motion, Petitioner presented the claims that counsel was ineffective in failing to object to the State's comments regarding the number of times the victim was stabbed, in failing to object to the photographs of the victim's injuries which included cuts made by medical

---

[7]Petitioner's Ground "4D." (Dkt. 1 at 15-17).

professionals who were attempting to treat the victim, and in failing to file a motion for a medical

expert to examine the victim's wounds to determine which were made by the medical professionals.

(Dkt. 18, Ex. 005, Vol. I at 29-31). The claims were addressed by the state trial court in its amended

order at Ground Seven and Ground Eight. (Dkt. 18, Ex. 005, Vol. II at 310-312). In that order, the

state trial court held as follows with respect to these claims:

### Ground Seven

Next, Defendant contends that counsel was ineffective by failing to object to the post mortem photographs being introduced as evidence. Defendant argues only photos that depict the victim's "actual injury" should have been introduced. As previously discussed, to present a facially sufficient claim Defendant must prove that counsel had no reason to overlook the objection and that the trial outcome would have been different if the objection was made. *See Rhue v. State*, 602 So. 2d 613 (Fla. 2d DCA 1992); *Squires v. State*, 558 So. 2d 401 (Fla. 1990). Here, Defendant fails to allege that counsel had no reason to overlook the objection or, that if counsel had objected, the trial outcome would be different. Based on the foregoing reasons, the Court finds the claim is facially insufficient and it is denied.

### Ground Eight

Defendant contends that counsel's performance was deficient by failing to hire an expert to determine "which wounds were made by medical personnel." Defendant argues the victim had only one cut and the other cuts were administered by hospital personnel while attending to the victim's medical needs. The record demonstrates that medical personnel did testify that certain cuts on the victim were consistent with stab wounds while other cuts were from medical intervention. *[See Exhibit 6: Excerpt of Trial, Transcript, pgs. 166-172.] [See Exhibit 7: Excerpt of Trial Transcript, pgs. 160-165.]* Dr . Hillman, the emergency room doctor, testified regarding the medical procedures performed on the victim and the type of injuries sustained by the victim. *[See Exhibit 8: Excerpt of Trial Transcript, pgs. 87-102.]* In fact, after reviewing photos of the victim, Dr. Hillman testified that neither himself nor the staff introduced any new incisions to the victim, rather they utilized

17

existing incisions to carry out the necessary medical intervention.
*[See Exhibit 8: pgs. 92-5.]* The trauma surgeon, Dr. Vioer, testified
regarding incisions that he created for medical purposes. *[See
Exhibit 9: Excerpt of Trial Transcript, pgs. 105-34.]* Dr. Vioer
testified that most of the cuts he made for medical purposes where
[sic] not displayed in the photographs tendered for evidence,
because the cuts were made in the lower groin area or in the
abdomen region. *[See Exhibit 9.]* The record demonstrates the jury
was presented with evidence that some of the incisions were
medically performed and were not caused by Defendant. However,
the evidence also demonstrates that a majority of the incisions were
not medically caused. Also, testimony indicates the victim suffered
from major, life threatening cuts to her windpipe and those cuts
were not performed by medical staff nor enlarged or disfigured for
medical purposes. [See Exhibits 6 - 9.] The Court finds the record
refutes Defendant's claims and Defendant has not proven that
counsel's performance was deficient. This claim is denied.

(Dkt. 18, Ex. 005, Vol. II at 310-311).

Initially, Petitioner's claim that counsel was ineffective in failing to obtain an expert who

would have testified that the cause of the victim's death was actually medical malpractice

following the stabbing of the victim is unexhausted. In his Rule 3.850 motion in state court,

Petitioner did identify this argument as his Ground Four, subsection D ("FAILURE TO OBTAIN

AN EXPERT TO CONDUCT AN EXAMINATION ON MS. DUKE, AND HER MEDICAL

RECORDS, TO PROVIDE AN OPINION ON THE ACTUAL CAUSE OF MS. DUKE'S

DEATH, THE STAB WOUND, OR INTERVENING MEDICAL NEGLIGENCE, WHERE

DEFENDANT WAS BEING TRIED FOR CAUSING THE DEATH OF MS. DUKE"). (Dkt.

18, Ex. 005, Vol. I at 17-18). However, in his 3.850 motion he did not present any facts or

argument in support of this claim; instead, he only presented facts and argument in support of his

claims that counsel was ineffective in failing to object to admission of the photographs of the

victim into evidence, and in failing to hire an expert to testify that the photographs of the victim

18

included wounds made by the medical professionals. (Dkt. 18, Ex. 005, Vol. I at 29-31).

Moreover, the state trial court, in its amended order denying the 3.850 motion, only addressed those claims on which Petitioner presented argument, and did not address the "medical malpractice" claim. (Dkt. 18, Ex. 005, Vol. II at 310-312). To exhaust a claim sufficiently, a petitioner must have presented the state court with the particular legal basis for relief in addition to the facts supporting it. *See  Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004)("The petitioner must present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing [upon (his) constitutional claim.'")(quotation omitted).

A petitioner's claims or portions of claims that are not exhausted but would clearly be barred if returned to state court must be dismissed. *See Coleman*, 501 U.S. at 735. Here, it would be futile to dismiss the case to give Petitioner the opportunity to exhaust this claim because it could have and should have been raised during the Rule 3.850 proceedings. *See Darity v. McDonough*, 2006 U.S. Dist. LEXIS 69972, 2006 WL 2792891 at *9 (M.D. Fla., Sept. 27, 2006). Petitioner cannot now return to state court to pursue this ineffective assistance claim, as a second Rule 3.850 motion would be subject to dismissal as an untimely and successive petition. *See* Fla. R. Crim. P. 3.850(b), (g). Thus, this Court cannot consider Petitioner's claim unless he can make a showing that the cause and prejudice or the fundamental miscarriage of justice exception is applicable. See *Jones*, 256 F.3d at 1138; *O'Sullivan*, 526 U.S. at 845-6.

Petitioner has not demonstrated cause or prejudice that would excuse his default. Moreover, he has neither alleged nor shown that the actual innocence exception applies. Absent such a showing, a federal habeas court should not discuss the merits of a claim that has been

19

procedurally defaulted in state court. *See Surrency v. Hadi*, 2006 U.S. Dist. LEXIS 86654, 2006 WL 3469534 at *6 (M.D. Fla., Nov. 30, 2006) (citing *Kight v. Singletary*, 50 F.3d 1539, 1543 (11th Cir.1995)). Accordingly, this portion of Ground Seven is procedurally barred and relief will be denied. *See Amoroso v. McDonough*, 2006 WL 2507618 at *3 (M.D. Fla., Aug. 29, 2006); *Kelley*, 377 F.3d at 1344.

Moreover, even if Petitioner had exhausted this claim, under Florida law the hospital's alleged medical malpractice following the stabbing is not a defense to the homicide charge. *Hallman v. State*, 371 So. 2d 482, 485 (Fla. 1979); *overruled on other grounds by Jones v. State*, 591 So.2d 911 (Fla. 1991).

As to Petitioner's claim that counsel was ineffective in allowing the photographs of the victim's injuries to come into evidence, in allowing the State to misstate the number of wounds that were caused by Petitioner, and in failing to obtain an expert to testify that some of the wounds were made by medical professionals while attempting to save the victim, this claim fails to demonstrate entitlement to relief. The emergency room physician, Dr. Hillman, who initially treated the victim stated that he initially noticed that she "had some lacerations or wounds to the center portion of her neck. They extended down passed [sic] the under part of her chest right here." (Dkt. 18, Ex. 002, Vol. I at 88). He also testified that "there was at least one large laceration that was across the neck. And I believe there was some smaller lacerations that went along with that." (Id. at 93). Dr. Hillman attested that he did not cause any of the cuts found in the victim's trachea, and he "did not extend any of the lacerations that were to the skin, and [he] did not extend any laceration [sic] that were to the trachea." (Dkt. 18, Ex. 002, Vol. I at 95; 100).

Dr. Vioer, the emergency room surgeon who treated the victim testified that he made an

incision on her chest and groin. (Id. at 111). He also attested that the post-mortem photographs of the victim showed multiple lacerations to her anterior neck. (Id. at 113). He described how the photographs of the victim showed that several of the lacerations of the neck "would not have been from someone trying to do an airway. Those incisions would be smaller over the airway. This is extended to the upper part of the chest which leads up to the neck...[and were] not in the area ...and not any type of pattern that any emergency person or any physician or surgeon would take as an approach to the trachea." (Id. at 117). He also testified that the incisions he made on the victim were not visible in the photographs. (Id. at 120).

Michaela Keith, a paramedic who was called to the victim's apartment, testified that the victim "had laceration stabs to her body" and did not cause any marks or cuts to the victim's body. (Id. at 139; 144).

The State's medical examiner performed an autopsy and found "five incised stab wounds in the neck area." (Dkt. 18, Ex. 002, Vol. II at 161). She also testified that none of the wounds were caused by medical intervention. (Id. at 167). The examiner also described a single wound to the victim's abdomen, and six wounds to the victim's left hand. (Id. at 167-168). She testified that she found twelve "non medical cuts or injuries" on the victim's body. (Id. at 169). That testimony is consistent with the State's statement that Petitioner stabbed the victim five times in the neck and seven times to her body. (Dkt. 18, Ex. 002, Vol. I at 12).

Petitioner fails to establish that the trial court's denial of this claim was either contrary to or an unreasonable application of *Strickland* or resulted in a decision that is based on an unreasonable determination of the facts.

21

**Ground Eight**[8]

Petitioner contends his attorney was ineffective when he neglected to request a jury

instruction on justifiable deadly use of force in self-defense.

Petitioner raised this claim in his Rule 3.850 motion.  (Dkt. 18, Ex. 005, Vol. I at 31-37).

In its amended order denying relief, the state trial court held as follows:

### Ground Nine

> Defendant argues that counsel was ineffective for arguing self
> defense in closing argument, but then counsel failed to request a
> self-defense jury instruction. Upon review of the closing
> arguments, it is evident that self-defense was not presented *[See
> Exhibit* 10: *Excerpt of Trial Transcript, pgs.* 304-22; 346-54.]
> Rather, Defendant's theory was that the evidence did not support a
> first-degree murder charge. *[See Exhibit* 10: *p.* 320.] Since
> Defendant did not raise a self-defense theory there was no reason
> for a self-defense instruction. The Court finds that Defendant did
> not prove that counsel's performance was deficient and as such this
> claim is denied.

(Dkt. 18, Ex. 005, Vol. II at 312).  The record supports the state trial court's findings.  The crux

of counsel's defense was that the evidence did not support, and the State failed to prove, a first-

degree murder.  (Dkt. 18, Ex. 002, Vol. III at 320).

Moreover, Petitioner's attorney did argue that the killing was excusable homicide or was

committed by the use of justifiable force (Dkt. 18, Ex. 002, Vol. III at 306-307), and the state

trial court instructed the jury on both justifiable and excusable homicide.  (Id. at 356-357).

Therefore, the jury was properly instructed and given the opportunity to find that Petitioner was

not guilty of murder but, instead, committed a justifiable or excusable homicide.  The state trial

court's rejection of the claim was a reasonable application of the *Strickland* standard.  Thus,

---

[8]Petitioner's Ground "4E."  (Dkt. 1 at 18-19).

Petitioner is not entitled to federal habeas relief on Ground Eight.

**Ground Nine**[9]

Petitioner next asserts that his attorney was ineffective in failing to call the victim's

psychiatrist, or another expert in that field, to testify regarding the victim's mental health history.

He maintains that the victim's mental health history would have revealed that she was very

aggressive and violent, and she had homicidal, delusional, and aggressive behavioral patterns.

He argues that had the victim's mental health history been presented as evidence at trial, it would

have supported Petitioner's claim that the victim attacked him with a knife and that the victim

was accidently stabbed after Petitioner attempted to take the knife away from her.

Petitioner raised this claim in his Rule 3.850 motion.  (Dkt. 18, Ex. 005, Vol. I at 37-40).

In its final order denying relief, the state trial court held as follows:

### Ground Ten

Defendant claims that counsel erred by failing to introduce evidence regarding the victim's past mental illness. Defendant argues this information would have assisted his defense theory. Defendant contends that a self-defense theory was raised; however, the record demonstrates that a self-defense theory was not presented, rather, defense argued the State had not met their burden of proof. [See *Exhibit 1: Excerpt of Trial Transcript, pg. 318-322.]* Regardless of which theory was advanced, Defendant alleges that counsel "had access to Ms. Duke's mental health record, which reflects several material facts concerning her mental personality" and counsel failed to present that evidence.

However, as the State correctly notes, documents provided by Defendant reveal that the victim was never diagnosed with any type of violent tendencies. *[See Defendant's Exhibit A.]*

---

[9]Petitioner's Ground "4F."  (Dkt. 1 at 20-21).

> Defendant submits the victim's medical records from 1995-1996
> to prove the victim had violent tendencies. However, the
> victim's [sic] was diagnosed with depression on each of her
> visits. *[See Defendant's Exhibit A.]* She was not diagnosed
> with anger, or violence, issues. It is clear these records would
> not have proven that the victim had violent propensities. The
> Court finds that Defendant has not shown that counsel's
> performance was deficient for failing to submit these records
> into evidence and this claim is denied.

(Dkt. 18, Ex. 005, Vol. III at 447-448).  The record supports the state trial court's findings.  The

victim's medical records submitted by Petitioner do not show the victim had a history of violent

or homicidal behaviors or propensities.  (Dkt. 18, Ex. 005, Vol. I at 47-71).  Petitioner does not

present clear and convincing evidence rebutting the state court's factual finding.  *See* 28 U.S.C.

§2254(e)(1).  Petitioner has failed to establish that the state trial court's denial of this claim of

ineffective assistance of trial counsel was contrary to or an unreasonable application of the

*Strickland* standard or resulted in a decision that is based on an unreasonable determination of

the facts. See 28 U.S.C. §2254(d). Thus, relief on this ground will be denied.

**Ground Ten**[10]

In Ground Ten, Petitioner asserts his attorney was ineffective in failing to obtain the

testimony of a toxicologist who might have been able to establish that the combination of drugs

and alcohol taken by the victim, when combined with her history of mental illness, would have

caused her to become delusional and violent.

Petitioner raised this claim in his Rule 3.850 motion.  (Dkt. 18, Ex. 005, Vol. I at 40-42).

In his motion he argued that the victim took her medication and drank alcohol, and a toxicologist

---

[10]Petitioner's Ground "4G."  (Dkt. 1 at 22-23).

could have testified as to the effect of the alcohol and the medication on the victim. He asserted that the side effects of the combination of the alcohol and medication included delusions and hallucinations, and had this evidence been presented by a toxicologist at trial, the jury would have believed Petitioner's testimony that the victim was delusional and only fabricating that Petitioner was trying to kill her.

In its final order denying relief, the state trial court held as follows:

### Ground Eleven

> Defendant alleges that counsel was ineffective by failing to appoint a toxicologist expert to testify on the effects of combining Elavil (amitriptyline) with alcohol. Defendant argues that an expert toxicologist's testimony, combined with evidence of victim's mental illness, would have supported the defense's theory and that a reasonable probability exists "the jury would have believed the Defendant's version of the events." The State argues that Defendant does not allege, or provide evidence, that the effects of Elavil and alcohol would render a side effect of violent actions. As previously discussed, no evidence has been presented to substantiate that the victim had violent propensities. Further, the Court finds Defendant has not shown that violent tendencies are a side effect of Elavil and alcohol and, therefore, there would be no logical reason for counsel to pursue this theory. Defendant has not proven that counsel's performance was deficient and the claim is denied.

(Dkt. 18, Ex. 005, Vol. III at 448-449). Again, the record supports the trial court's findings. Petitioner presented no evidence in support of his claim that a toxicologist would have testified that the combination of alcohol and the victim's medication would have caused the victim to become delusional, nor did he present to the state trial court evidence or argument that the victim's consumption of alcohol and her medication, coupled with her medical history, caused her to become violent and attack Petitioner. Therefore, he failed to demonstrate that counsel's

25

failure to hire a toxicologist was deficient or that it was prejudicial to his defense. Likewise, the literature regarding the victim's medication Petitioner provided with his federal habeas petition fails to support his claim that a toxicologist would have testified that the combination of the alcohol and medication would have caused the victim to become delusional, violent, or homicidal. (*See* Dkt. 1 at 91-101).

Petitioner has failed to establish that the state trial court's denial of this claim of ineffective assistance of trial counsel was contrary to or an unreasonable application of the *Strickland* standard or resulted in a decision that is based on an unreasonable determination of the facts. *See* 28 U.S.C. §2254(d). Thus, relief on this ground will be denied.

**Ground Eleven**[11]

In Ground Eleven, Petitioner essentially states that he adopts any and all arguments he raised in his state 3.850 motion, and he wants the Court to consider any claims he raised in his 3.850 motion but may have neglected to raise in his federal habeas petition. He also asks the Court to treat his claims as federal constitutional claims.

Rule 2(c), Rules Governing §2254 Cases states in pertinent part that "[t]he petition must: (1) specify all the grounds for relief available to the petitioner; (2) state the facts supporting each ground; (3) state the relief requested..." Petitioner must specifically raise each ground and state the facts supporting each ground in his petition; asking the Court to review the state record and address any grounds Petitioner failed to raise in his federal habeas petition is inappropriate.

---

[11]Petitioner's Ground "5." (Dkt. 1 at 24-25).

Accordingly, relief on this ground will be denied.[12]

## Conclusion

For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief.

**ACCORDINGLY**, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE AND ORDERED** in Tampa, Florida, on _August 30th_ , 2007.


_____
JAMES D. WHITTEMORE
United States District Judge

Copies furnished to:
All Parties/Counsel of Record

SA:sfc

---

[12]In any event, it appears that Petitioner has raised in his federal habeas petition all the grounds he raised in his state 3.850 motion.

27